<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| OWLPOINT, LLC,<br><br>                    Plaintiff,<br>v.<br><br>SPENCER THOMAS GROUP,<br><br>                    Defendant. | Case No. 3:20-cv-04495-BRM-DEA<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Spencer Thomas Group's ("STG" or "Defendant") Motion to Stay. (ECF No. 16.) Plaintiff OwlPoint, LLC ("OwlPoint" or "Plaintiff") opposes the Motion. (ECF No. 17.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b),[1] for the reasons set forth below and for good cause appearing, Defendant's Motion to Stay is **DENIED.**

**I.    BACKGROUND**

Defendant seeks to stay all proceedings in this case pending the resolution of the JAMS Arbitration for the shareholder dispute aspects of pending state litigation involving Plaintiff, Mark Ludwig ("Ludwig"), and Mark Muntzner ("Muntzner"). (*See generally* ECF No. 16.) Ludwig and Muntzner worked for OwlPoint until their terminations on December 21, 2018. (ECF No. 1 ¶ 16.) They now work for STG but allegedly remain Members of OwlPoint. (*Id.* ¶¶ 16, 21.) Neither

---

[1] The Court held a conference following Defendants' initial informal request for a stay, where it ordered formal briefing and set a briefing schedule. (ECF Nos. 8-10, 12.)

Ludwig nor Muntzner is party to this case. (ECF No. 16 at 1.) Additionally, Defendant is not party to the JAMS Arbitration nor the pending state litigation. (ECF No. 17 at 13.)

This matter concerns several claims by OwlPoint alleging unlawful interference with its business and utilization of its confidential and proprietary information by STG. (ECF No. 1 ¶¶ 30, 50.) OwlPoint and STG are competitors in the IT Consulting Services market. (*Id.* ¶ 3.) On July 1, 2016, Ludwig and Muntzner became OwlPoint Members and each received a 25% stake in OwlPoint. (*Id.* ¶¶ 10–11.) Mark Blanke ("Blanke") was already a Member of OwlPoint and retained a 50% stake. (*Id.* ¶¶ 7, 10.) To become Members, the three entered into an Operating Agreement which included a Covenant Not to Compete. (*Id.* ¶¶ 11–12.) The Non-Compete Covenant was to be in effect for as long as one was a Member of the company and for two years following the transfer of a Member's interests in the company. (*Id.* ¶ 12.) On December 21, 2018, Ludwig and Muntzer were "both terminated for cause." (*Id.* ¶ 16.) In or around January 2019, STG hired Ludwig and Muntzer in "either the same or substantially similar positions as they held while employed by OwlPoint," although both allegedly remained members of OwlPoint. (*Id.* ¶ 21.) At this time, STG also hired Stephanie Solyon who, like Ludwig and Muntzer, was a recently terminated OwlPoint employee who was "privy to confidential and proprietary information as well as trade secrets belonging to OwlPoint." (*Id.* ¶¶ 19, 21.) Ludwig and Muntzer's terminations as well as other claims are the subject of pending state litigation, while the shareholder dispute aspects of their claims were referred to arbitration before JAMS. (*Id.* ¶ 16; ECF No. 16 at 5.)

OwlPoint alleges four causes of action against STG: (1) tortious interference with contractual relationships; (2) tortious interference with prospective economic advantage; (3) unfair competition; and (4) unjust enrichment. (ECF No. 1 ¶¶ 51–74.) Moreover, OwlPoint contends STG was able to commit these alleged acts by using the proprietary and confidential information it

obtained from Ludwig, Muntzer, and Solyon. (*Id.*) STG moves to stay all proceedings arguing that the pending JAMS Arbitration is "substantially similar" to this case and "the resolution of the factual and legal issues presently before JAMS may make this lawsuit moot." (ECF No. 16 at 4, 7.)

On July 1, 2020, Defendant filed a Motion to Stay. (ECF No. 16.) On July 17, 2020, Plaintiff filed an Opposition to the Motion. (ECF No. 17.) On July 24, 2020, Defendant filed a Reply. (ECF No. 18.)

## II. LEGAL STANDARD

This Court has broad discretion to stay proceedings. *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am.*, 544 F.2d 1207, 1215 (3d Cir. 1976). It is established that, "[i]n the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Id*. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *United States v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994 ("The power to stay is incidental to the power inherent in every court to dispose of cases so as to promote their fair and efficient adjudication."). However, "[a] stay of a civil proceeding is an extraordinary remedy." *Haas v. Burlington Cty.*, No. 08-1102, 2009 WL 4250037, at *2 (D.N.J. 2009) (citing *Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp.2d 523, 526 (D.N.J. 1998)). To determine the appropriateness of a stay, courts consider "whether a stay will simplify issues and promote judicial economy, the balance of harm to the parties, and the length of the [] stay." *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*, No. 11-0011, 2011 WL 4056318, at *2 (D.N.J. Sept. 12, 2011) (citation omitted).

**III. DECISION**

STG moves to stay all proceedings pending the disposition or resolution of the JAMS Arbitration, basing the justification for its motion on the *Colorado River* abstention octrine. (*See generally* ECF No. 16.)

The *Colorado River* abstention doctrine "allows a federal court to abstain, either by staying or dismissing a pending federal action, where there is a parallel ongoing state court proceeding." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009) (citing *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976)). However, the doctrine "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983). Additionally, "*Colorado River* abstention must be grounded on more than just the interest in avoiding duplicative litigation." *Spring City Corp. v. American Bldgs. Co.*, 193 F.3d 165, 171-72 (3d Cir. 1999) (citing *Colorado River*, 424 U.S. at 800). The invocation of the doctrine "ordinarily contemplates that the federal courts will have nothing further to do in resolving any substantive part of the case." *Ingersoll-Rand Fin. Corp. v. Callison*, 844 F.2d 133, 134 (3d Cir. 1988) (citing *Moses H. Cone*, 460 U.S. at 28). To decide if abstention is appropriate, the Court considers a two-part test. *Nationwide Mut.*, 571 F.3d at 307. First, there must be "a parallel state proceeding that raises 'substantially identical claims [and] nearly identical allegations and issues.'" *Id.* (citation omitted). If there are parallel proceedings, then the Court "look[s] to a multi-factor test to determine whether 'extraordinary circumstances' meriting abstention are present." *Id.* (citation omitted).

STG asserts the JAMS Arbitration is a "parallel state proceeding" to this case. (ECF No. 16 at 4.) Although the court has "never required complete identity of parties for abstention," it does look to "identities of parties, claims, and time" to determine if cases are parallel. *IFC Interconsult, AG v. Safeguard Intern. Partners, LLC*, 438 F.3d 298, 306 (3d Cir. 2006). Moreover, "parallel proceedings are those that are 'truly duplicative,' that is, when the parties and the claims are 'identical,' or at least 'effectively the same.'" *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 285 (3d Cir. 2017) (quoting *Trent v. Dial Medical of Florida, Inc.*, 33 F.3d 217, 224 (3d Cir. 1994), *superseded by statute on other grounds as recognized in Nat'l City Mortg. Co. v. Stephen*, 647 F.3d 78, 83 (3d Cir. 2011)). "When the claims, parties, or requested relief differ, deference may not be appropriate." *Complaint of Bankers Trust Co. v. Chatterjee*, 636 F.2d 37, 40 (3d Cir. 1980).

The Court first looks to whether the federal case and the arbitration are parallel. Courts in this district have established that actions that involve other considerable similarities need not involve perfectly identical parties to be parallel, but "case law reveals that this leniency is adopted largely for where the parties are switched, such that a plaintiff in the federal action is a defendant in the state action (and vice versa) and where there are additional parties to one action that are not included in the other." *United States v. Nobel Learning Cmtys.*, No. 1:17-cv-366 (NLH/JS), 2017 WL 4697050, at *2 (D.N.J. Oct. 19, 2017) (footnotes omitted). *See also Trent*, 33 F.3d at 224 (finding although state and federal actions did not include all the same parties they are effectively identical because they both include the plaintiffs and defendants relevant to the pending motion); *Moses H. Cone*, 460 U.S. at 14 (noting the parties were substantially the same where the plaintiff in the federal action was the defendant in the state action and the defendant in the federal action was the plaintiff in the state action.) Here the parties are neither switched, nor are they the same

5

except for the addition of extra parties. Instead, OwlPoint and STG are parties to the federal case, while STG is not party to the state proceeding nor JAMS Arbitration.[2] (ECF No. 1 ¶¶ 2–3; ECF No. 16 at 4–5). Given these differences this Court does not find the present circumstances warrant leniency, and it does not a find that the parties are essentially identical.

Additionally, the Court does not find the claims in the federal and state actions to be substantially similar. "[W]hile certain issues to be litigated in the . . . federal claim may be identical to issues that have been or will be raised . . . in the state court, the lack of identity of all issues necessarily precludes *Colorado River* abstention." *Univ. of Md. V. Peat Marwick Main & Co.*, 923 F.2d 265, 276 (3d Cir. 1991). The federal complaint concerns claims of tortious interference with contractual relationships and prospective economic advantage, unfair competition, and unjust enrichment by STG (ECF No. 1 at ¶¶ 59–74), while the JAMS Arbitration concerns a "shareholder oppression dispute between the members of OwlPoint." (ECF No. 17 at 6.) Moreover, Defendant argues for a stay to avoid duplicative litigation (ECF No. 16 at 9), but "*Colorado River* abstention must be grounded on more than just the interest in avoiding duplicative litigation." *Spring City*, 193 F.3d at 171-72. Although the two proceedings concern some of the same parties and facts, the two are not sufficiently duplicative to justify the application of the *Colorado River* abstention doctrine.

Even presuming parallelism, this action does not present the type of extraordinary circumstances warranting abstention. There is a strong presumption against abstention, and to qualify as an "extraordinary circumstance," justifying the application of the *Colorado River* abstention doctrine, the court considers six factors:

---

[2] OwlPoint, Blanke, Ludwig, and Muntzner are parties to the JAMS Arbitration, while OwlPoint, Blanke, Ludwig, Muntzner, and Laura Ayres are parties to the state proceeding. (ECF No. 17-1 Ex. A, B.)

> (1) [in an *in rem* case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoid piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties.

*Nationwide Mut.*, 571 F.3d at 308 (quoting *Spring City*, 193 F.3d at 171). *See also IFC Interconsult*, 438 F.3d at 307 (noting the "disfavor in which [the court] hold[s] abstention"). Additionally, "the weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses H. Cone*, 460 U.S. at 16. As such, "no one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado River*, 424 U.S. 800, at 818–19.

The first two factors are not at issue in this case because there is no dispute over property nor any contention that the federal forum is any less convenient, especially because both actions are pending in New Jersey. (*See generally* ECF No. 1; ECF No. 16.) In considering the third factor, "the mere possibility of piecemeal litigation" absent "a strongly articulated congressional policy against piecemeal litigation in the specific context of the case under review" is insufficient to justify *Colorado River* abstention. *Nobel Learning Cmtys.*, 2017 WL 4697050, at *2 (quoting *Ryan v. Johnson*, 115 F.3d 193, 198 (3d Cir. 1997)). Defendant argues "issues in both matters are substantially duplicative" (ECF No. 16 at 9), but fails to introduce any congressional policy against piecemeal litigation in a case like this. The state action was filed first and state law controls in both actions, but state court will be unable to protect the interests of both parties because only Plaintiff is party to the action pending in state court. Therefore, in considering these factors and the narrow application of the *Colorado River* abstention doctrine, the Court cannot find this qualifies as an exceptional case.

The Court similarly declines to exercise its "inherent authority" to stay this proceeding. In deciding whether a stay is appropriate, the Court considers whether it "will simplify issues and promote judicial economy, the balance of harm to the parties, and the length of the [] stay." *Bais Yaakov*, 2011 WL 4056318, at *2. OwlPoint and STG are parties to no other litigation or dispute, and not all claims raised in this case will be addressed or adjudicated by the JAMS arbitration. Furthermore, OwlPoint would be prejudiced by the stay because it could not prosecute its claims against STG.

Accordingly, for the reasons stated above, Defendant's Motion to Stay the proceeding is **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Stay the proceeding is **DENIED.** The Court will enter an appropriate Order.

**Date: January 29, 2021**                               */s/ Brian R. Martinotti*
                                                        **HON. BRIAN R. MARTINOTTI**
                                                        **UNITED STATES DISTRICT JUDGE**